**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BENEFICIAL INNOVATIONS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CASE NO. 2:07-CV-263-TJW-CE |
| | § | |
| BLOCKDOT, INC.; CAREERBUILDER, | § | |
| LLC.; CNET NETWORKS, INC.; DIGG, | § | |
| INC.; EBAUM'S WORLD, INC.; JABEZ | § | |
| NETWORK, INC.; THE NEW YORK | § | |
| TIMES COMPANY; THE WASHINGTON | § | |
| POST COMPANY; THE WEATHER | § | |
| CHANNEL INTERACTIVE, INC., | § | |
| | § | |
| *Defendants.* | § | |
| ———————————————— | § | |
| | § | |
| BENEFICIAL INNOVATIONS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CASE NO. 2:07-CV-555-TJW-CE |
| | § | |
| AOL LLC; THE DALLAS MORNING | § | |
| NEWS, INC.; GOOGLE INC.; IGN | § | |
| ENTERTAINMENT, INC.; MORRIS | § | |
| COMMUNICATIONS COMPANY, LLC; | § | |
| TRIBUNE INTERACTIVE, INC.; YAHOO! | § | |
| INC.; YOUTUBE, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Beneficial Innovations, Inc. ("Beneficial") filed suit against numerous

defendants (collectively "Defendants") alleging infringement of U.S. Patent Nos. 6,183,366 ("the

'366 patent") and 6,712,702 ("the '702 patent"). The '366 patent is entitled "An Advertising

System for the Internet and Local Area Networks."  The '702 patent, entitled "Method and System for Playing Games on a Network," is a continuation-in-part of the application leading to the '366 patent, with the same named inventors.  This order addresses the parties' various claim construction disputes.  The order will first briefly address the technology at issue in the case and then turn to the merits of the claim construction issues.

## II.    BACKGROUND OF THE TECHNOLOGY

The patents-in-suit are directed to an information service and advertising providing system for presenting interactive information services together with interactive advertising on a communications network.  Beneficial is alleging infringement by the Defendants of claim 1 of the '366 patent and claim 53 of the '702 patent.

The **abstract of the '366 patent** states:

> The present invention is an information service and advertising providing system for presenting interactive information services together with interactive advertising on a communications network such as the Internet and LANs. The information service may be a game played interactively on the network while advertising is communicated between users and an advertising network node. However, other interactive services, such as are available on the Internet, are also accessible for concurrent use with advertising presentations. Advertising or promotionals may be selectively presented to users by comparing archived user profiles with demographic profiles of desired users. User responses to advertising may be used for evaluating advertising effectiveness such as for test or microtarget marketing. Compensation to users for viewing advertising may also be provided. For instance, users may be provided with subsidized Internet access for receiving advertising while concurrently interacting with an Internet service. Users may also be provided with various games and/or game tournaments via interactive network communications. Thus, users may respond to advertising while being entertained (e.g., via games), or while interacting with another network service.

**Claim 1 of the '366 patent** is reproduced below:

An apparatus for presenting one of products and services while providing an interactive informational service on a network, comprising:

an advertising selector for determining, for each of a plurality of users, a corresponding advertising presentation, from a plurality of advertising presentations, to present to the user at a corresponding node of the network, wherein each of at least some presentations of said corresponding advertising presentations is unrequested and is used for presenting information about at least one of a product and a service;

a service providing computational system for providing a first of the users with a requested corresponding instance of the informational service, wherein the instance includes a plurality of user interactions, via the network, with the service providing computational system;

a combiner for obtaining combined data, wherein said combined data is a result of combining said corresponding advertising presentation with data for displaying at least a portion of said corresponding instance, said corresponding advertising presentation including at least one network link for identifying another presentation related to said corresponding advertising presentation, said network link associated with a corresponding one or more locations on a display of said corresponding advertising presentation, wherein a user input indicative of at least one of said locations activates said network link for presenting said another presentation;

wherein said service providing computational system provides substantially a same informational content regardless of which of said advertising presentations are combined therewith;

a network interface for (a) and (b) following:

> (a) transmitting, via the network, said combined data to the first user for display during user interactions with said corresponding instance;

> (b) receiving, from the first user, one or more user data items indicative of an action in response to said combined data being presented;

one or more user response processing modules for one or more of: evaluating an effectiveness of said corresponding presentation, and obtaining another one of said advertising presentations for providing to said combiner, said processing modules receiving said one or more user data items.

The **abstract of the '702 patent** states:

> The present invention is a game playing method and apparatus for automating games such as blackjack, poker, craps, roulette, baccarat and pai gow, wherein players may play continuously and asynchronously, and information related to advertised items can be exchanged between players and advertisers. In one

embodiment, each instance of a game is likely unique from all other current game instances. The games do not require a manual dealer and in one embodiment, played in a gaming establishment using low cost gaming stations. The present invention may also, be used to play such games on the Internet or an interactive cable television network wherein a game controller communicates with players at network nodes in their homes and at their leisure since there is no game tempo requirement. During a game, advertising is selectively provided by comparing player personal information with a desired demographic profile. Player responses to advertising are used for evaluating advertising effectiveness. The invention is useful for test marketing of products, advertisements, and reduces advertising costs.

**Claim 53 of the '702 patent** is reproduced below:

An apparatus for a service on a communications network, comprising:

a store for storing user identification, for first and second users, said store accessible by a service providing network accessible node (SPNAN);

a network interface for transmitting, via the network, from the SPNAN, first information related to communications between: (a1) the SPNAN, and (a2) a first network accessible node from which the first user communicates with the SPNAN;

wherein said first information is utilized in subsequent network communications between the SPNAN and the first network accessible node, and wherein said first information is stored on the first network accessible node so that it is available in a subsequent different network connection by the first user;

wherein said network interface receives, via the network, first responsive information indicative of said first information being present on said first network accessible node;

wherein said first responsive information is used for one or more of: (b1) providing the first user with access to a service offered by the SPNAN, (b2) determining that a network transmission received at the first network accessible node will be processed in a predetermined expected manner, and (b3) determining that the first network accessible node has a predetermined program element available;

a controller for providing access to an instance of a first service to the first user, wherein one or more corresponding service display representations of the first service are transmitted from the SPNAN to the first user via the first network accessible node, wherein at least most of the service display representations are interactive with the first user for providing corresponding responsive

transmissions on the network via the SPNAN during the instance of the first service;

wherein said SPNAN provides a second instance of a service with the second user, wherein one or more corresponding service representations for the second instance are transmitted from the SPNAN to a second network accessible node for presenting the service representations of the second instance to the second user, wherein the service representations of the second instance are transmitted to the second network accessible node while the first user is interacting with the instance of the first service;

one or more programmatic elements for combining advertising related information with service related information to obtain a resulting combination that is in a format: (a) acceptable for being transmitted on the network by the SPNAN to at least the first user, and (b) processed by the first network accessible node so that, as a consequence of such processing, a display of an advertising presentation corresponding to said advertising information is provided on said first network accessible node, said display occurring concurrently with a display of one of the corresponding service representations for the instance of the first service, said advertising presentation presenting advertising related to a purchase of a product or service;

wherein said SPNAN receives said first responsive information for identifying the first user, and said SPNAN receives said first responsive information when the first user has reconnected the first network accessible node to the network after (i) and (ii) following: (i) said first information has been stored on the first network accessible node, and (ii) said first network accessible node has disconnected from the network.

## III.    GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction is an issue of law for the court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  The specification must

contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary

meaning.  *Id*.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id*.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315, *quoting Markman*, 52 F.3d at 978.  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims."  *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id.* at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.* What is

8

described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented.  *Id*.  The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word.  *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language.  *Id*. at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

The patents-in-suit include claim limitations that are argued to fall within the scope of 35 U.S.C. § 112, ¶ 6.  "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure. . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.  When a claim uses the term "means" to describe a limitation, a presumption inheres that the inventor used the term to invoke § 112, ¶ 6.  *Biomedino, LLC v. Waters Technologies Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). "This presumption can be rebutted when the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety."  *Id., citing Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003).  By contrast, when a claim term does not use "means," the term is presumptively not subject to § 112, ¶ 6.  *CCS Fitness, Inc. v. Brunswick*

*Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002); *MIT v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006).   A limitation lacking the term "means" may overcome the presumption if it is shown that "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *MIT*, 462 F.3d at 1353, *quoting CCS Fitness*, 288 F.3d. at 1369.   "What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1360 (Fed. Cir. 2004).

Once the court has concluded the claim limitation is a means-plus-function limitation, the first step in construing a means-plus-function limitation is to identify the recited function. *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).   The second step in the analysis is to identify in the specification the structure corresponding to the recited function. *Id.*   The "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003), *citing B. Braun v. Abbott Labs*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).   The patentee must clearly link or associate structure with the claimed function as part of the quid pro quo for allowing the patentee to express the claim in terms of function pursuant to § 112, ¶ 6. *See id.* at 1211; *see also Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1377 (Fed. Cir. 2001).   The "price that must be paid" for use of means-plus-function claim language is the limitation of the claim to the means specified in the written description and equivalents thereof.

*See O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997).  "If the specification does not contain an adequate disclosure of the structure that corresponds to the claimed function, the patentee will have 'failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112,' which renders the claim invalid for indefiniteness."  *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009), *quoting In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).  It is important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing the structure.  *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999); *Biomedino*, 490 F.3d at 953.  Fundamentally, it is improper to look to the knowledge of one skilled in the art separate and apart from the disclosure of the patent.  *See Medical Instrumentation*, 344 F.3d at 1211-12.  "[A] challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function."  *Budde*, 250 F.3d at 1376-77.

## IV.    AGREED CONSTRUCTIONS

Based upon the joint submission of claim construction charts, the following terms of the '366 and '702 patents have been agreed by the parties, and therefore adopted by this Court:

| Claim term | Agreed Construction |
| --- | --- |
| advertising presentation | advertising image that is displayed on the user's device |
| advertising related information | advertising data that is processed into the advertising presentation |
| first network accessible node | a user's device that can be accessed via the communications network |

## V.   TERMS IN DISPUTE

### 1.   "network" / "communications network" ('366 patent and '702 patent)

| Term | Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| network | "a system of interconnected computers and devices that transfer and exchange information" | "collection of hardware components through which the user's computer, on the one hand, and the service providing computational system, on the other hand, can communicate" |
| communications network | "a system of interconnected computers and devices that transfer and exchange information" | "collection of hardware components through which the first and second network accessible nodes, on the one hand, and the SPNAN, on the other hand, can communicate" |

The primary dispute regarding "network" and/or "communications network" is whether the "service providing network accessible node (SPNAN)" and the "first network accessible node" are separate and distinct from the network as Defendants contend or are included in the network as Beneficial contends.

The term "network" is used in claim 1 of the '366 patent and the term "communications network" is used in claim 53 of the '702 patent. The parties agree that the terms "network" and "communications network" should be given the same meanings. While the Court adopts essentially the same construction for each term, the Court construes the terms slightly different because the Court's construction depends on the slightly different language used in the different claims. In particular, claim 1 uses the terms "network," "service providing computation system," and "node of the network," whereas claim 53 uses the terms "communications network," service providing network accessible node (SPNAN)," and "first [or second] network accessible node." The Court finds that the claims expressly identify three separate entities: the network accessible node / node of the network, the communications network / network, and the service providing

12

network accessible node / service providing computation system  The Court finds that in some instances the typical understanding of the term "network" or "communications network" may be interconnected computers or devices, but the claim language is clear in this case that the network is separate from and between the "SPNAN" and "network accessible node" in claim 53 and the "service providing computational system" and "node of the network" in claim 1.  For example, it is clear from claim 53 that the "network accessible node" can be connected and disconnected from the communications network.  Further, the Court finds that the claims expressly require a "network interface" that separates the user's computer and the service providing computer from the network and allows the user computer and service providing computer to communicate with one another.  Claim 1 describes transmitting combined data from the nodes "via" the network, and claim 53 describes transmitting between the nodes and the SPNAN first information and receiving first responsive information "via" the network.  Further, the parties agree that the phrase "first network accessible node" means "a user's device that can be accessed via the communications network."  In the context of the claims and specification, one of ordinary skill in the art would consider a node as being connected or connectable to a network, but not as part of the network as that term is used in the claims.  The Court finds that the communications network, as used in the claims and illustrated throughout the specification, exists separate and apart from the "network accessible node" and the "SPNAN."  Likewise, the Court finds that the network, as used in the claims and illustrated throughout the specification, exists separate and apart from the "node of the network" and the "service providing computation system."  This interpretation is consistent with dependent claim 54, which provides certain additional limitations "when the network is the Internet," implying that the user's computer and the SPNAN are not part of the

network.

The Court rejects Beneficial's argument, even if true, that Defendants' construction would exclude an embodiment in the specification and therefore should not be adopted. First, the Court's construction does not exclude all disclosed embodiments. Second, the Court finds that neither asserted claim covers the embodiment that this construction allegedly excludes. Third, every claim does not need to cover every disclosed embodiment of a patent. *See Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("It is often the case that different claims are directed to and cover different disclosed embodiments."); *Sinorgchem Co., Shandong v. International Trade Com'n*, 511 F.3d 1132, 1138-39 (Fed. Cir. 2007) (claims can be construed to exclude embodiments where multiple embodiments are disclosed). This is particularly true in this situation where there are multiple patents with numerous claims covering various aspects of the disclosed specification. Thus, the Court construes the term "communications network" to mean "*interconnected computers or devices that transfer and exchange information between the service providing network accessible node ("SPNAN") and the first and second network accessible nodes.*" The Court construes the term "network" to mean "*interconnected computers or devices that transfer and exchange information between the service providing computational system and the node of the network.*"

### 2. "unrequested" ('366 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary.<br><br>Alternatively, "not requested"<br><br>Alternatively, "not requested by the user (although it may be sent in response to a signal from the user's computer)" | "not sent in response to a signal from a user's computer" |

The Court finds that both parties essentially agree that the term means not requested, but disagree as to the "what" that does not request.  The parties dispute whether unrequested information may be sent in response to a signal from the user's computer.  Beneficial argues that "unrequested" means not requested by the user, but it can be requested by a signal from the user's computer.  Defendants argue that "unrequested" means that the unrequested information is not sent in response to a signal from the user's computer.  Claim 1 of the '366 patent states that advertising presentations are "unrequested," whereas an information service is "requested."  Thus, the Court finds that the claim specifically contemplates two ways to transfer information via the network to the user's computer.   The term "unrequested" is used twice in the specification and in both instances it relates to an alternative embodiment in which the website downloads to the user's computer unrequested information such as advertising.  '366 patent, 29:13-52.  In these situations, it is the website that periodically sends selected advertising, i.e. unrequested information, to the user's computer.  *Id.*  In contrast, the term "requested" is used numerous times in the specification in reference to the user's actions.  *See, e.g.,* '366 patent, 13:8-11 ("bet amount that the player has requested"), 17:17-19 ("if the player has not requested"), 22:53-56 ("user may be requested to enter").  The Court finds that one of ordinary skill in the art would understand that when information is requested, the user seeks the requested information from the website.  On the other hand, when information is unrequested, information is provided to the user's computer from the website without any specific request by the user.  Thus, the Court finds that "unrequested" is not the same as "not sent in response to a signal from a user's computer."  This interpretation is consistent with numerous dependent claims, such as claims 9, 82, and 115, which provides that certain information is "unrequested by the user," a

15

"user requested wager," and "a saleable product or saleable service requested by the users," implying that whether information is requested or unrequested depends upon the user. Thus, the Court disagrees with Defendants' proposed construction. The Court construes the term "unrequested" to mean "*not requested by the user.*"

### 3. "instance" ('366 and '702 patents)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "an occurrence" | "occurrence of multiple user interactions stored at a server, where each interaction limits subsequent interactions" |

Both parties agree that the term means occurrence, but the Defendants include additional limitations to the proposed construction. Beneficial has provided dictionary definitions that show that the definition of "instance" means "a case or occurrence of something." The Court finds that the Defendants' proposal is too limiting and is inconsistent with the ordinary meaning of the term. The specification of the '702 patent refers to "instances" as multiple occurrences of something and uses the "plural" of the term "instance." *See* '702 patent, 30:63-31:14. The Court finds that "instance" can be just a single occurrence of something and is not necessarily limited to plural instances. Further, requiring an "instance" to have multiple interactions would render the additional limitation of "includes a plurality of user interactions" in claim 1 meaningless. Thus, the Court construes the term "instance" as "*occurrence.*"

### 4. "substantially a same informational content regardless of which of said advertising presentations are combined therewith" ('366 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary. | "informational content that is unrelated to the advertising presentation combined therewith" |

The Court rejects Defendants' proposal. The Court finds that "regardless" does not mean

"unrelated."  Thus, the Court finds that Defendants' proposal to equate the phrase "regardless of which" with "unrelated" should be rejected.  The Court construes the phrase "substantially a same informational content regardless of which of said advertising presentations are combined therewith" to mean "*informational content that is not substantially changed based on which of said advertising presentations are combined therewith.*"

### 5.  "service" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "an activity that benefits another person or group" | "a specific set of capabilities provided to users" |

The Court finds little support in the claims or specification for Defendants' proposal.  However, the Court finds that the repeated use of the term "service" in the claim denotes something more specific than the generic construction proposed by Beneficial.  Beneficial provides definitions for service as "conduct or performance that assists or benefits someone or something" and "an act of assistance or benefit."  The specification of the '702 patent has numerous references to service or services.  The Summary of the Invention states that the present invention exchanges information on goods and/or services between the players or users and the sponsors or advertisers.  '702 patent, 4:2-7.  Further, the specification repeatedly refers to "goods or services" of the sponsor or advertiser, that the user has the ability to purchase or view sponsor goods and/or services, that the product or service relates to an advertisement, that the service presentations can be informational or interactive, and that the user may access gaming and advertisement services of the website.  *See* '702 patent, 4:3-66; 29:52-56.  Thus, "services" is referenced throughout the specification in conjunction with a sponsor's products or goods, information exchange service within a gaming context, and advertisement services of a website.

17

*See id.* Further, the parties acknowledge that in dependent claim 54 the service is a "game." The Court finds that the term is not as limited as the Defendants' proposed construction. Thus, the Court construes the term "service" to mean "*beneficial activity provided to a user.*"

### 6. "a store for storing user identification" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary.<br><br>Alternatively, "a device or medium that stores data used to identify a user." | "medium that stores user registration information" |

The Court finds that the primary dispute between the parties as to this term is whether the stored information is the generic "data used to identify a user" or the more specific "registration information." Because the phrase "a store for storing user identification" and the relevant claim language does not limit the stored information merely to "registration information," the Court finds that Defendants' construction improperly limits the phrase to an example in the specification. Thus, the Court finds that "user identification" information is not limited to merely "registration information." Because the medium is the material within the storage device that retains the stored information, the Court finds that the more appropriate term for where the information is stored is "medium." Thus, the Court construes the term "a store for storing user identification" to mean "*a medium that stores data used to identify a user.*"

### 7. "first" and "second" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The terms "first" and "second" are used in the claim to distinguish two instances of the same thing. For example, "first user" means a user other than a "second user." The terms "first" and "second" do not refer to time sequence. | No construction is necessary for "first" and "second." |

The Court essentially agrees with the proposed construction and arguments by Beneficial. The Court notes that the Defendants do not provide any argument on these terms. The Court finds that in this case "first" and "second" should be instances of the same thing. *See Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1348 (Fed. Cir. 2005) ("[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation."). Thus, consistent with Beneficial's proposal, the Court construes the terms "first" and "second" as follows: "*the terms 'first' and 'second' are used to distinguish repeated instances of the same element or limitation.*"

### 8.  "a service providing network accessible node" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a device or devices (such as computers or servers) used for providing a service that is accessible over a network" | "server that provides a particular service and that can be accessed via the communications network" |

The Court finds that the primary difference between the parties' proposed constructions is that Defendants limit the term to a singular node of a specific type, a server, whereas Beneficial argues for a much broader construction for the term node as device or devices.  The Court finds that the term network, as used in the claims and illustrated throughout the specification, exists separate and apart from the "network accessible node" and the "SPNAN."  The Court finds that in the claims, "node" appears in the context of a "service providing network accessible node" and a "first network accessible node."  The Court finds that there is no limitation in the specification or prosecution history that the service providing network accessible node be limited to a server.  Thus, the Court rejects Defendants' proposal.  The parties agree that the phrase "first network accessible node" means "a user's device that can be accessed via the communications

network."  The parties' agreed upon construction implies that a node is a type of "device."  Thus, the Court construes the phrase "service providing network accessible node (SPNAN)" to mean "*a device used for providing a service that is accessible via the communications network*."

### 9. "first information" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction is necessary (other than "first," which is addressed above).<br><br>Alternatively,  "processed, stored or transmitted data" | "a computer program, such as a daemon" |

The Court finds that claim 53 of the '702 patent requires that "first information:" (i) is related to communications between the SPNAN and a user at a first network accessible node; (ii) is stored on the first network accessible node so that it can be used on subsequent network connections; and (iii) is utilized in subsequent network communications between the SPNAN and the first network accessible node.  Claim 53 also requires that "first responsive information" (i) indicates the presence of the "first information" on the first network accessible node and (ii) identifies the first user.  Claim 53 also requires that the "first information" is sent to the first network accessible node from the SPNAN and that the "first responsive information" is sent to the SPNAN.  Unasserted claim 8 of the '702 patent, dependent upon a different independent claim, recites that the "first information" "includes executable instructions for receiving advertisement information via the network."  The Court finds that the patentee did not use the term "program" or "instructions," and instead used the broader term "information."  The Court finds that Defendants' proposed construction to limit "first information" to a "computer program, such as a daemon" would improperly limit "first information" to an example in the specification.

Further, the Court finds that the term "information" is clearly broader than Defendants' proposed construction and there is no support in the specification of the claims for limiting the term to Defendants' proposal. Beneficial has provided dictionary definitions of the term "information" of "processed, stored, or transmitted data" and "computer data at any stage of processing." Further, the parties agree that "advertising related information" means "advertising data that is processed into the advertising presentation," implying that information, by itself, is a type of data that is processed or can be processed. Thus, the Court construes the phrase "first information" to mean "*first data that can be processed.*"

### 10. "first responsive information" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary.<br><br>Alternatively, "processed, stored, or transmitted data that is made in response to or replies to something" | "a response related to the first information" |

The Court finds that the parties propose similar constructions for the term. The Court finds that Beneficial's proposal unnecessarily repeats the definition of "first information." Claim 53 expressly requires that the "first responsive information" be "indicative of said first information being present on said first network accessible node" and that it can identify the first user. The Court construes the term "first responsive information" to mean "*a response related to the first information.*"

**11. "said first responsive information is used for one or more of" ('702 patent)**

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary.<br><br>Alternatively, "one or more of" means "at least one or more of." | "the first responsive information is capable of performing all of, and actually performs at least one of" |

The primary dispute regarding this term is whether the first responsive information "is capable of performing all of, and actually performs at least one of" as the Defendants propose, or only needs to perform "at least one or more of" as Beneficial proposes. The Court finds that there is a difference between being "used for" and being "capable of performing." The Defendants' construction attempts to rewrite the claim language from "…is used for one or more of" to "…is capable of performing all of, and actually performs at least one of." Defendants' argument relies primarily upon an example in the specification that is capable of performing all of the recited elements. The Court is not inclined to adopt Defendants' construction. The Court finds that the language "used for one or more of" does not necessitate that "said responsive information" be capable of performing all of the elements rather than capable of performing at least one of the elements. Thus, the Court construes the phrase "said first responsive information is used for one or more of" to mean "*the first responsive information is used for at least one or more of.*"

**12. "SPNAN receives said first responsive information when the first user has reconnected the first network accessible node to the network" ('702 patent)**

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary (except for the individual terms that will be separately construed).<br><br>Alternatively, "SPNAN receives said first responsive information when the first user has established a subsequent different network connection between the SPNAN and the first network accessible node" | "SPNAN receives the first responsive information at the time that the first user reestablishes the ability of the first network accessible node to communicate with the communications network" |

The Court finds that Defendants' proposed construction of the term "when" to mean "at the time that" is consistent with its meaning in the context of the '702 patent.  Further, Beneficial acknowledges that Defendants' proposed construction of the terms "when" and "reconnect" are consistent with the ordinary meaning in the context of the '702 patent.  Claim 53 explicitly requires that the SPNAN receive the first responsive information when the first network accessible node is reconnected to the network.  Thus, the Court rejects Beneficial's proposal to substitute the term "network" with the term "SPNAN."  Further, the claim language implies that the network accessible node is actually reconnected with the network, not that the node merely has the ability to connect to the network as Defendants propose.  Thus, the Court construes the phrase "SPNAN receives said first responsive information when the first user has reconnected the first network accessible node to the network" to mean "*SPNAN receives said first responsive information at the time that the first user reestablishes a subsequent different network connection with the communications network.*"

### 13. "display" ('702 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary. <br><br> Alternatively, "a visual representation of." | "single window" |

The Court finds that claim 53 expressly requires "a display of an advertising presentation" in addition to "a display of one of the corresponding service representations," both displays occurring concurrently. The Court finds that the fact that an advertisement can be displayed in a window does not necessarily limit a display to "a single window." The Court finds that Defendants' attempt to limit "display" to a single window is an impermissible attempt to limit the term to an embodiment in the specification. Thus, the Court construes the term "display" as "*a visual representation of.*"

### 14. "advertising selector for…" ('366 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary. <br><br> Alternatively, "advertising selector" means "a device or program that selects or chooses advertisements" | Should be construed under 35 U.S.C. § 112, ¶ 6. <br><br> Function: Determining, for each of a plurality of users, a corresponding advertising presentation, from a plurality of advertising presentations. <br><br> Structure: Advertising selection engine 618 (disclosed in Figs. 6A and 8A) including the algorithm for performing the claimed function (disclosed in the '366 patent at col. 23:32-36 and 44-48). <br><br> Alternative: To the extent this is not sufficient structure or algorithm, the '366 patent lacks disclosure of all of the structure or algorithm for performing the corresponding function, which renders this term indefinite. |

The parties' primary dispute with respect to this term is whether it should be construed as

a means-plus-function limitation under § 112, ¶ 6.  Beneficial argues that because the claim element does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not apply.  Beneficial argues that the presumption cannot be overcome because the phrase "advertising selector" is a claim term that recites a sufficient structure and the term has a well understood meaning in the art.  Defendants argue that the "advertising selector…" limitation should be construed under §112, ¶ 6.  Defendants generally argue that a limitation that does not recite the term "means" can still be construed as a means-plus function limitation if it can be shown that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.  Defendants argue that generic or software-related terms do not connote sufficient structure.  First, Defendants argue that the phrase "advertising selector" does not recite sufficiently definite structure.  Defendants argue that neither the generic word "selector" nor the addition of the word "advertising" conveys sufficient structure to a person of ordinary skill in the art.  Second, Defendants argue that the remainder of the limitation, "for determining, for each of a plurality of users, a corresponding advertising presentation," merely recites function and does not convey sufficient structure for performing that function.

The Court finds that, because the claim element "advertising selector" does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not apply.  *MIT*, 462 F.3d at 1353-54.  The Court finds that the Defendants have not met their burden to rebut the presumption.  The Court finds that one of ordinary skill in the art would understand the term "advertising selector" to recite sufficient structure and to have a reasonably well understood meaning.  The Court finds that the term is not "simply a nonce word or a verbal construct that is

not recognized as the name of structure." *See Lighting World*, 382 F.3d at 1359-60. The specification of the '366 patent describes the capabilities and uses of the advertising selection engine. *See* '366 patent, 23:43-24:42; *see also* FIG. 8A and 8B (item 618). Further, Beneficial has provided a dictionary definition for the term "selector" as "one that selects." The Court notes that the Defendants have not provided an alternative construction, and have not argued against Beneficial's proposed construction, if the term is not construed under § 112, ¶ 6. Thus, the Court construes the term "advertising selector" to mean "*program that selects advertisement presentations.*"

### 15. "programmatic elements for…" ('702 patent)

| S&N's Proposed Construction | Arthrex's Proposed Construction |
|---|---|
| No construction is necessary for "**programmatic elements**." <br><br> Alternatively, "**programmatic elements**" means "computer readable instructions to perform a function, task or step" | Should be construed under 35 U.S.C. § 112, ¶ 6. <br><br> <u>Function</u>: Combining advertising related information with service related information to obtain a resulting combination that is in a format: (a) acceptable for being transmitted on the network by the SPNAN to at least the first user, and (b) processed by the first network accessible node so that, as a consequence of such processing, a display of an advertising presentation corresponding to said advertising information is provided on said first network accessible node. <br><br> <u>Structure</u>: A computer (such as HTML display engine 622 and game play engine 632) that is programmed to carry out the algorithm for performing the claimed function. However, the '702 patent lacks disclosure of all of the structure or algorithm for performing the corresponding function, which renders this term indefinite. |

The parties' primary dispute with respect to this term is whether it should be construed as a means-plus-function limitation under § 112, ¶ 6. Beneficial argues that because the claim element does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not

apply.    Beneficial argues that the presumption cannot be overcome because the phrase "programmatic elements" is a claim term that recites a sufficient structure and the term has a well understood meaning in the art.    Defendants argue that the "programmatic elements…" limitation should be construed under §112, ¶ 6.  Defendants generally argue that a limitation that does not recite the term "means" can still be construed as a means-plus function limitation if it can be shown that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.  Defendants argue that generic or software-related terms do not connote sufficient structure.  Defendants argue that the phrase "programmatic elements" does not recite sufficiently definite structure, does not appear anywhere in the specification of the '702 patent, and does not have a generally understood meaning to a person of ordinary skill in the art.  Defendants further argue that the generic words "elements" and "programmatic" do not convey sufficient structure.  Defendants argue that this limitation should be construed as a means-plus-function limitation.  However, Defendants argue that the specification does not recite sufficient structure for performing the claimed function – it does not describe any specific algorithm for combining advertising related information with service related information to obtain a resulting combination.  Thus, Defendants argue that the claim term is indefinite.

The Court finds that, because the claim element "programmatic elements" does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not apply.  *MIT*, 462 F.3d at 1353-54.  The Court finds that the Defendants have not met their burden to rebut the presumption.  The Federal Circuit has indicated that the generic term "element" typically does not connote sufficiently definite structure.  *See id.* ("The generic terms 'mechanism,' 'means,'

'element,' and 'device,' typically do not connote sufficiently definite structure.")  However, in this case, the Court finds that one of ordinary skill in the art would understand the term "programmatic elements" to recite sufficient structure and to have a reasonably well understood meaning to one of skill in the art.  The Court finds that Beneficial has provided a dictionary definition for the term "programmatic" as "of, relating to, or having a program" and "program" as "a set of coded instructions that enables a machine, especially a computer, to perform a desired sequence of operations."   The Court also finds that Beneficial has provided a dictionary definition for the term "program element" as "part of a central computer system that carries out the instruction sequence scheduled by the programmer."   The Court finds that the term "programmatic elements" is not "simply a nonce word or a verbal construct that is not recognized as the name of structure." *See Lighting World*, 382 F.3d at 1359-60.  Here, technical dictionaries supply ample evidence that the claim term designates structure.  Other courts have also found that computer code or program code provides sufficient structure.  *See Affymetrix, Inc. v. Hyseq, Inc.*, 132 F. Supp. 2d 1212, 1232 (N.D. Cal. 2002) ("The Court finds that 'computer code' is not a generic term, but rather recites structure that is understood by those of skill in the art to be a type of device for accomplishing the stated functions."); *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, 2006 WL 3147697, *11-13 (N.D. Ill. 2006) (finding "program code" to not be a generic term and to have sufficient structure); *Aloft Media, LLC v. Adobe Systems Inc.*, 570 F. Supp. 2d 887, 894-96 (E.D. Tex. 2008) (finding that the "computer code" elements referenced by the "wherein" clauses showing operation of the code recite sufficiently definite structure to avoid § 112, ¶6).  Further, the term "program element" is recited in another limitation of claim 53 without any implications of a means-plus-function limitation,

implying that the terms "program element" and "programmatic element" should not be construed under § 112, ¶ 6.  The Court notes that the Defendants have not provided an alternative construction, and have not argued against Beneficial's proposed construction, if the term is not construed under § 112, ¶ 6.  Thus, the Court construes the term "programmatic elements" to mean "*computer readable instructions to perform a specific function.*"

### 16. "user response processing modules for …" ('366 patent)

| Beneficial's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary.<br><br>Alternatively, "**user response processing modules**" means "devices, components or units of a computer program that process information received by a user" | Should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function: One or more of: evaluating an effectiveness of said corresponding presentation, and obtaining another one of said advertising presentations for providing to said combiner, said processing modules receiving said one or more user data items.<br><br>Structure: A computer that is programmed to carry out the algorithm for performing the claimed function. However, the '366 patent lacks disclosure of all of the structure or algorithm for performing the corresponding function, which renders this term indefinite. |

The parties' primary dispute with respect to this term is whether it should be construed as a means-plus-function limitation under § 112, ¶ 6.  Beneficial argues that because the claim element does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not apply.  Beneficial argues that the presumption cannot be overcome because the phrase "user response processing modules…" is a claim term that recites a sufficient structure and the term has a well understood meaning in the art.  Defendants argue that the "user response processing modules" limitation should be construed under §112, ¶ 6.  Defendants generally argue that a limitation that does not recite the term "means" can still be construed as a means-plus function

limitation if it can be shown that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function. Defendants argue that generic or software-related terms do not connote sufficient structure. Defendants argue that the phrase "user response processing modules" does not recite sufficiently definite structure, does not appear anywhere in the specification of the '366 patent, and does not have a generally understood meaning to a person of ordinary skill in the art. Defendants argue that the generic words "modules" and "user response processing" do not convey sufficient structure. Defendants further argue that the remainder of the limitation merely recites function and does not convey sufficient structure for performing that function. However, Defendants argue that the specification does not recite sufficient structure for performing the claimed function, and therefore, the claim is indefinite.

The Court finds that, because the claim element "user response processing modules" does not use the word "means," there is a rebuttable presumption that § 112, ¶ 6 does not apply. *MIT*, 462 F.3d at 1353-54. The Court finds that the Defendants have not met their burden to rebut the presumption. The Court finds that one of ordinary skill in the art would understand the term "user response processing modules" to recite sufficient structure and to have a reasonably well understood meaning to one of skill in the art. Beneficial has provided dictionary definitions for "processing" as "the manipulation of data within a computer system" and "module" as "a collection of routines and data structures that performs a particular task or implements a particular abstract data type." The Court finds that the term "user response processing modules" is not "simply a nonce word or a verbal construct that is not recognized as the name of structure." *See Lighting World*, 382 F.3d at 1359-60. Here, technical dictionaries supply ample

evidence that the claim term designates structure.  Other courts have also found that a "module" provides sufficient structure.  *PalmTop Productions, Inc. v. Lo-Q PLC*, 450 F. Supp. 2d 1344, 1364-66 (N.D. Ga. 2006) (finding that "communications module" and "module" represents more than a mere verbal construct serving as a means for substitute); *Stanacard, LLC v. Rebtel Networks, AB*, --- F.Supp.2d ----, 2010 WL 46006, *13-15 (S.D.N.Y. 2010) (finding "module" limitations to have sufficient structure such that § 112, ¶ 6 is not invoked).  The Court notes that the Defendants have not provided an alternative construction, and have not argued against Beneficial's proposed construction, if the term is not construed under § 112, ¶ 6.  Thus, the Court construes the term "user response processing modules" to mean "*components or units of a computer program that process information received by a user.*"

## VI.   CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the '366 and '702 patents.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

SIGNED this 12th day of April, 2010.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE