**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BENEFICIAL INNOVATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>AOL LLC, a Delaware limited liability company; THE DALLAS MORNING NEWS, INC., a Delaware corporation; GOOGLE INC., a Delaware corporation; MORRIS COMMUNICATIONS COMPANY, LLC, a Georgia limited liability company; TRIBUNE INTERACTIVE, INC., a Delaware corporation; YAHOO! INC., a Delaware corporation; and YOUTUBE, LLC, a Delaware limited liability company;<br><br>Defendants. | CASE NO. 2:07-CV-555(TJW/CE)<br><br>**Jury Demanded** |

**<u>Plaintiff Beneficial Innovations, Inc.'s Response to Defendant's
Motion For Reconsideration of the Court's Claim Construction Order</u>**

I.      **Introduction**

Defendants contend that they are now in possession of "new evidence" – an express definition of the term "unrequested" made by Beneficial Innovations before the PTO during the re-examination of the '366 Patent – that is inconsistent with Beneficial Innovations' arguments made during the *Markman* hearing. Defendants' motion must be denied, however, because it rests entirely upon two false premises:

*False premise # 1*:   "In its Reexam Response, Plaintiff expressly defined the term 'unrequested' advertising to mean 'e.g., advertising that just appears and is not in response to any immediately previous user input, e.g., a popup ad.'"  Mot. at 7.

That premise is false. Beneficial Innovations expressly <u>did not</u> define the term "unrequested" in the re-examination. Rather, in arguing to the PTO that the asserted prior art reference did not teach a system that provided "unrequested" advertising, Beneficial Innovations merely provided the PTO with <u>an example</u> (the term "e.g." means "for example") of one type of advertisement that would not be an advertisement that was requested by the user. An example is not a definition. Indeed, providing an example of a concept is an express declaration that the concept *includes more than* just the example.

*False premise # 2*:   "Beneficial Innovations admitted to the United States Patent and Trademark Office ("PTO") that a disputed term has a meaning that directly contradicts the definition Beneficial proposed to this Court at the claim construction hearing."  Mot. at 1.

That premise is false. The example of an unrequested advertisement that Beneficial Innovations presented to the PTO is entirely consistent with its proposed claim construction. Indeed, the example – a popup ad – is an ideal example of an advertisement that fits Beneficial Innovations' claim construction because it is "not requested by the user (although it may be sent

in response to a signal from the user's computer)." Claim Construction Order at 14 [Dkt. No. 253].[1]

## II.     Beneficial Innovations did not expressly define the term "unrequested."

In response to the PTO Examiner's rejection of Claim 1 of the '366 patent as being anticipated by an ad in *Internet Week*, Beneficial Innovations stated:

> There is no teaching of providing "unrequested" advertising (*e.g.*, advertising that just appears and is not in response to any immediately previous user input, *e.g.*, a popup ad). All that is stated in the Internet Week reference is that ads should be changed, *e.g.*, at least once a week, or "to cycle them evenly through a week."
>
> This is clearly not presenting unrequested advertisement.

Exh 5 to Maier decl.

In setting forth the chart of what Defendant contends are the competing positions taken by Beneficial Innovations, Defendant conspicuously deletes presents just one part of Beneficial Innovations' statement – "advertising that just appears and is not in response to any immediately previous user input, e.g.. a pop-up ad." Mot. at 2. Defendants ignore that the statement is immediately preceded by "e.g.," which is an abbreviation of the Latin phrase "exempli gratia," which means "for example." *Amer. Heritage Dict. of the Eng. Language* 571(4th ed. 2000); *Webster's Third New Inter'l Dict.* 726 (2002) (Exh. 1). The expression "e.g." is used to explicitly signal that what follows is <u>not</u> an all-encompassing definition. It is used, instead, to express that the concept being discussed encompasses <u>more than</u> just the example that follows.

To illustrate, suppose the claim element at issue was "herding dog" and the prosecution statement was "There is no teaching of providing a herding dog (*e.g.*, a dog that is used to herd sheep, *e.g.*, an Australian cattle-dog)." Because the parenthetical after "herding dog" commences with "e.g.," the immediately following words do <u>not</u> provide an express definition of a herding dog, and the meaning of "herding dog" is not "a dog that is used to herd sheep." Rather, "a dog that is used to herd sheep" is just <u>an example</u> of <u>one type</u> of herding dog (and "herding dog," therefore encompasses using dogs to heard cattle, goats, deer, poultry, etc.).

Similarly, the dog breed that immediately follows "a dog that is used to herd sheep," commences with "e.g.," which means that the writer does not intend the breed as a definition of the concept that precedes it.

The use of the abbreviation "e.g." after a word or phrase is the antithesis of providing an express definition of the word or phrase.[2]  Under controlling Federal Circuit law, "statements in the prosecution history do not indicate a disavowal or disclaimer of claim scope" if they "merely provide an example to illustrate differences between the invention and the prior art."  *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1375 (Fed. Cir. 2004).  Such statements do not indicate "that the scope of the claimed invention was limited to that particular type."  *Id*.

The Federal Circuit's decision in *Sinorgchem Co. v. ITC*, 511 F.3d 1132 (Fed. Cir. 2007) does not change this result.  In that case, the patentee stated in the specification:

> A "controlled amount" of protic material is an amount up to that which inhibits the reaction of aniline with nitrobenzene, e.g., up to about 4% H[2]O based on the volume of the reaction mixture when aniline is utilized as the solvent.

*Sinorgchem Co. v. ITC*, 511 F.3d at 1136.

The parties and the Court agreed that the patentee expressly defined the term "controlled amount" in the specification by (i) setting forth the claim term by quotation marks and (ii) using the word "is".  *Id.* ("Moreover, the word 'is,' again a term used here in the specification, may 'signify that a patentee is serving as its own lexicographer.'") (internal citation omitted.).

The issue before the Court was whether the express definition provided by the patentee included all of the language that followed the "controlled amount."  That is, did the patentee intend to include in the express definition "up to about 4% H[2]O based on the volume of the reaction mixture when aniline is utilized as the solvent."

---

[2]   By contrast, the abbreviation *i.e.* for the Latin phrase "id est" means "that is."  *See Amer. Heritage Dict. of the Eng. Language,* pg. 872 (4th ed. 2000); *Webster's Third New Inter'l Dict.*, pg. 1124 (2002) (Exh. 2).  For example, if one were to write:  "Many workers expect to put in a forty-hour week – *i.e.*, to work eight hours a day," it might be inferred that the writer was defining "a forty-hour week" as "to work eight hours a day."

3

In the context of the patent's specification, the Court found that the 4% limit was intended to be included in the express definition. The Court noted that the while the specification referred generally to at least six different solvents, the definition provided by the patentee referred specifically to reactions that involved one solvent – aniline. *Id.* at 1138. Accordingly, where the patentee states that "controlled amount" is "an amount <u>up to</u> that which inhibits the reaction of aniline with nitrobenzene," it is clear that the addition of the 4% limit was meant to further define the "controlled amount" when aniline is utilized as the solvent – and not as an example of one of several limits that may be achieved when aniline is utilized as the solvent. The Court noted: "Quite tellingly, aniline and DMSO were the only two solvents of the six solvents mentioned in the specification for which an express numerical limit was given for the 'controlled amount.'" *Id.*

The issue before the Court in *Sinorgchem* is entirely different than the issue here. The patentee's use of the abbreviation "e.g." in the instant action precedes the <u>entire</u> phrase that the Defendants now contend is an express definition. And the patentee did not use words like "is" to signify that the patentee was providing an express definition of the term "unrequested." For example, the patentee here did not state: "Unrequested" advertising *is* "advertising that just appears and is not in response to any immediately previous user input, e.g., pop-up ads." The patentee merely set forth ***one example***, among several examples, of what would constitute an "unrequested" ad.

Accordingly, Defendants' contention that Beneficial submitted to the PTO an express definition of an "unrequested" advertisement is simply false. It certainly does not constitute the clear and unambiguous disavowal of claim scope that would be required to overcome a construction compelled by the ordinary meaning of the claim language and the specification (*i.e.*, the Court's construction). *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed. Cir. 2007) ("To operate as a disclaimer, the statement in the prosecution history must be clear and unambiguous, and constitute a clear disavowal of scope.").

### III. The example provided by Beneficial Innovations is consistent with its proposed claim construction and arguments made in support of that construction.

The statement made by Beneficial Innovations during the re-exam regarding the term "unrequested" is entirely consistent with (i) its claim construction proposal, (ii) its statements at the *Markman* hearing regarding that claim construction proposal and (iii) the Court's final claim construction order.

During the claim construction process, Defendants sought to construe the term "unrequested" such that an advertisement would be considered "unrequested" only if it were "not sent in response to a signal from a user's computer."  Defendants did not offer this construction because it represented the ordinary and customary meaning of the word.  Rather, since all advertisements that are presented to a user's node of a network in the combined manner required by the '366 Patent are sent in response to a signal from the user's computer, Defendant sought to avoid infringement by urging a construction in which no advertisement presented to the user (whether it was requested by the user or not) would be considered "unrequested."

In response, Beneficial Innovations proposed a construction of the term – "not requested by the user (although it may be sent in response to a signal from the user's computer)" – that represented the term's ordinary meaning in the context of the patent's claims and specification. In so doing, Beneficial Innovation explained its construction at the claim construction hearing as follows:

- a user makes a request for an instance of a service (*e.g.*, the user makes a request for information about the Super Bowl);
- the user's request results in a signal that is sent from the user's computer to the SPNAN;
- in response to the signal that is sent from the user's computer (which includes the user's request for information about the Super Bowl), the SPNAN sends back (i) information that includes both the requested instance of a service (*i.e.*, information about the Super Bowl) and (ii) "unrequested" advertisements.

*See* Exh. 1 to Maier decl.

5

Beneficial Innovations explained that the advertisement that is returned is "unrequested" because, even though the advertisement may have been sent in response to a signal from the user's computer, the user requested the instance of the service (*e.g.*, information about the Super Bowl) and not the advertisement that was combined with the service. Accordingly, the advertisement was "unrequested."

In the re-exam, Beneficial Innovations was consistent.

*First*, when Beneficial Innovations used the phrase "user input" in describing the example of an unrequested advertisement, it used that phrase synonymously with "specific user request" or "specific request from the user," as opposed to a "signal from the user's computer." We know that because the example provided by Beneficial Innovations of an ad that "is not in response to any immediately previous user input" – a popup ad – is an ad that (i) is sent to the user in response to a signal from the user's computer; but (ii) is not sent in response to any specific request by the user (*i.e.*, it is not the service requested by the user).[3] Accordingly, Beneficial Innovations' statement to the PTO is properly read as follows:

---

[3]   In its reply to Beneficial Innovations' response to its motion to reconsider in the *Blockdot* Action, The New York Times takes issue with Plaintiff's description of a "pop-up ad." NYT Reply at 4-5 [*Blockdot* Dkt. # 263]. Defendants claims that Plaintiff's only support was "attorney argument," and then proceeded to provided the Court with two sources that fully support's Plaintiff's position. *First,* Defendant provides the Court with a definition of the term "pop-up ad" that is entirely consistent with Plaintiff's position. A "pop-up ad" is "an advertisement on the Internet that appears in a new window in the foreground, often whenever a new page is opened within a site. Pop-up ads may appear in response to a mouse click, a rollover, or after a user has spent a predetermined amount of time at a Web site." *See* Exh. 2 to Second Rosenbloom decl. (emphasis added). *Second*, Defendants cite to Col. 29:43-30:13 of the '366 patent, which also confirms that the ads are sent in response to a signal from the user's computer. That portion of the specification discloses an ad that is being downloaded to the user's node in response to a signal from the user. It states: "Whenever the end user processor 318 connects with the Internet service provider 810, the game/advertisement website 308 is alerted by the Internet service provider and the DISPLAY ENGINE 622 starts up the downloaded daemon. . ." The thing that triggers the downloading of the ad to the user is clearly the signal that is sent from the user's node when the user "connects with" the ISP, which then "alerts" the "game/advertisement website."

> There is no teaching of providing "unrequested" advertising (*e.g.*, advertising that just appears and is not in response to any immediately previous [specific request from the user], *e.g.*, a popup ad).

This statement is entirely consistent with Beneficial Innovations' proposed construction in this case, its statements during the *Markman* hearing, and this Court's construction of the term "unrequested." [4]

*Second*, in responding to the Examiner's rejection, Beneficial Innovations did not, as Defendants contend, "admit[] to the PTO that the advertisement delivered by the InfoSeek search engine with the requested search results was 'requested' advertising.**"** Mot. at 4. In fact, Beneficial Innovations' statement to the PTO was not even directed to any statement in the reference that disclosed the presentation of advertisements that are combined at the SPNAN with service information prior to being sent to the user's node.[5] Accordingly, Beneficial Innovations did not take an inconsistent position before the PTO (*i.e.*, it did not argue or suggest to the PTO that an advertisement in the prior art reference is "requested," but a "substantively indistinguishable" advertisement presented by Google is "unrequested.").

Instead, Beneficial Innovations statement during the re-examination was in response to a prior art reference that disclosed the following information about the presentation of advertisements:

> Allowing advertisers to change graphics frequently is another way to use the medium to add value. InfoSeek's Peck <u>encourages advertisers to change their banners often – at least once a week</u> . . . The firm also developed proprietary software to allow advertisers to specify the frequency of each banner. For example, an advertiser with four banners can ask InfoSeek to <u>cycle them evenly</u>

---

[4] Accordingly, Plaintiff's example to the PTO is not "quite similar to defendants' claim construction position" at the *Markman* hearing. Mot. at 2

[5] Indeed, Beneficial Innovations pointed out to the PTO that "[t]here was no indication of a 'combiner' as recited in Claim 1. . . In particular, the Internet Week passage of (a.2) above appears to indicate that advertisers may provide such advertisements to the user (*e.g.,* via an InfoSeek proprietary technique) rather than such advertisements being 'combined' with an instance of an 'informational service' as recited in Claim 1." *See* Exh. 5 to Maier decl. at 32

7

>   <u>through a week</u>, or it can specify that one banner be displayed twice as often as the other three.

Exh. 4 to Maier decl. (emphasis added).

>   In rejecting claim 1, the Examiner characterized this section of the reference as follows:

>   Advertisements are displayed on InfoSeek's search site together with the results of a users search (see second page, second paragraph) . . . Advertisers can change their advertisements frequently and use them to offer products or services (see second page, sixth paragraph).

Exh. 3 to Maier decl.

In response to the Examiner's statements, Beneficial Innovations argued simply that there was "no teaching of providing 'unrequested' advertising" in the reference because "[a]ll that is stated in the Internet Week reference is that ads should be changed, e.g., at least once a week, or 'to cycle them evenly through the week.'" Exh. 5 to Maier decl. at 32. Beneficial explained to the PTO that this statement in the prior art says nothing about whether the ads are unrequested. Importantly, Beneficial Innovations did not suggest or argue to the PTO that banner advertisements that are combined with service information prior to being sent to a user in response to a request by the user for the service information is "requested" advertisements. It simply said that the reference, which disclosed ads that "should be changed" or "cycled," did not teach "providing unrequested advertisement." *See* Exh. 5 to Maier decl. This statement is clearly not inconsistent with Beneficial Innovations' statements during the *Markman* hearing.

<u>Third</u>**,** the example set forth in the prosecution history refutes the construction proposed by Defendants. Because:

(i) Defendants' proposed a construction of "unrequested" as "not sent in response to a signal from a user's computer," [Claim Construction Order at 14 [Dkt. No. 253]],

(ii) a pop-up ad is sent to the user in response to a signal from the user's computer,

(iii) therefore Defendants' proposed construction of "unrequested" would <u>not</u> encompass a pop-up ad,

(iv) the prosecution history expressly confirms that a pop-up ad is an example within the scope of the claim element "unrequested,"

8

(iv) therefore, Defendants' proposed construction would exclude an advertisement type (*e.g*, pop-up ads) that the prosecution history expressly confirms must be included within the scope of the claim element "unrequested."

Defendants' construction, therefore, is precluded by the prosecution history.

*   *   *

An objective reading of the prosecution history proves that (a) Beneficial Innovations did not include an express definition of "unrequested," and (b) the example of a type of unrequested advertisement set forth in the prosecution history is consistent with Beneficial's proposed claim construction and refutes Defendants' construction. It certainly does not constitute the clear and unambiguous disavowal of claim scope that would be required to overcome a construction compelled by the ordinary meaning of the claim language and the specification (*i.e.*, the Court's construction). *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed. Cir. 2007) ("the statement in the prosecution history must be clear and unambiguous").

**IV.    Conclusion.**

For the foregoing reasons, Defendants' motion should be denied.

Dated:  May 20, 2010                                  Respectfully submitted,

BENEFICIAL INNOVATIONS, INC.

By: /s/ Julien A. Adams

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
Energy Centre
1127 Judson Road, Suite 220
P. O. Box 3999 (75606-3999)
Longview, Texas 75601-5157
Email:  ccapshaw@capshawlaw.com
Email:  ederieux@capshawlaw.com

        Robert Christopher Bunt
State Bar No. 00787165
Email: rcbunt@pbatyler.com
Robert M. Parker
State Bar No. 15498000
Email: rmparker@pbatyler.com
Charles Ainsworth
E-mail: charley@pbatyler.com
Parker, Bunt & Ainsworth, P.C.
100 East Ferguson, Ste. 1114
Tyler, TX 75702
Telephone: (903) 531–3535
Facsimile: (903) 533–9687

Gregory S. Dovel
Cal. State Bar No. 135387
Julien A. Adams
Cal. State Bar No. 156135
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656–7066
Facsimile: (310) 657–7069
Email: greg@dovellaw.com

ATTORNEYS FOR PLAINTIFF,
BENEFICIAL INNOVATIONS, INC.

## CERTIFICATE OF SERVICE

    I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 20th day of May, 2010 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

    /s/ Julien A. Adams
    Julien A. Adams